45374.   SLAUGHTER v. SLAUGHTER et al.

EBERHARDT, Judge. Mrs. Blanche G. Slaughter sued Mrs. Mary F. Slaughter, her daughter, and Charles F. Slaughter, Jr., her son-in-law, for injuries received when she fell in the home of the son-in-law and daughter. The depositions of the plaintiff and the daughter were taken, revealing the following factual situation.

Mary, the daughter, called plaintiff and asked her to come over to take care of Mary's son Steve, who was recuperating from influenza, while Mary went grocery shopping. Plaintiff acceded to the request and went to the home of Mary and her son-in-law. Upon arrival Steve was on the couch in the living room. At

one end of the room were two easy chairs and a lamp table. Plaintiff seated herself in the chair next to the couch, and Mary sat in the other easy chair next to her. After looking at some get-well cards, plaintiff got up and went to Steve on the couch to see whether he needed aspirin. Mary got up from her chair, kicking out a footstool which accompanied that particular chair, went into the kitchen to get some ginger ale, brought it back and handed it to plaintiff who was to give it to Steve, took some toast crumbs from Steve, and walked back into the kitchen. Plaintiff gave the ginger ale to Steve and, when he had finished with it, got up out of her chair and took the glass or mug from him at the couch. Mary called from the kitchen that she was going to throw the toast crumbs to the birds, and after a few seconds when she had taken two or three steps in the kitchen she heard plaintiff fall in the living room. Plaintiff had turned from the couch and started toward the kitchen with the mug when Mary called to her, and, looking toward the kitchen, she fell forward, presumably over the footstool in her path, though she testified that she "fell over something" and that later her daughter told her that she had kicked the footstool out and that it was what she fell over. The daughter did not see her mother fall, but surmised that she fell over the footstool.

Mary and her husband had been living in the house for approximately six years, and the same furniture, including the footstool, had been in the living room during that time. Plaintiff had visited there approximately once a week during the six years, and she had observed the footstool by the same chair on many occasions. The footstool was large, and on the occasion in question it was not hidden but was away from the chair, a position it did not generally occupy. The lighting and surroundings were such that it was readily observable.

The trial court granted summary judgment for defendants, and plaintiff appeals. *Held:*

1. Plaintiff alleges no act of negligence, and offers no proof of any, against her son-in-law, Charles F. Slaughter. She does allege that he and the daughter own the house where they live and where she says she was injured, but ownership alone im-

poses no liability for injury sustained on the premises. The owner or occupier of land is not an insurer of the safety of those who may go thereon. *Feldman v. Whipkey's Drug Shop,* 121 Ga. App. 580 (3) (174 SE2d 474). There is no liability from ownership alone, *Golf Club Co. v. Rothstein,* 97 Ga. App. 128, 133 (102 SE2d 654), aff'd 214 Ga. 187 (104 SE2d 83); *Hines v. Bell,* 104 Ga. App. 76, 85 (120 SE2d 892), or from joint ownership, *Miles v. Harrison,* 223 Ga. 352 (155 SE2d 6), or from co-tenancy, *Smith v. Inman,* 32 Ga. App. 24 (122 SE 632). It must appear that the injury resulted from a breach of some duty owed by the defendant to the injured party.

Nor is the husband liable for torts of his wife merely because of the relationship. *Durden v. Maddox,* 73 Ga. App. 491, 493 (37 SE2d 219). Accord *Curtis v. Ashworth,* 165 Ga. 782 (142 SE 111, 59 ALR 1457). "The agency of a wife must be proved as in other cases, except when the law presumes agency.[1] *Code* § 53-509. There is no agency from mere ownership. *Graham v. Cleveland,* 58 Ga. App. 810 (200 SE 184)." *Durden v. Maddox,* 73 Ga. App. 491, 493, supra. "In this State a husband now is liable for the torts of his wife only when they are committed by her in the capacity of agent." *Miller v. Straus,* 38 Ga. App. 781 (2) (145 SE 501). Agency of the wife in the creation of a "dangerous condition" does not appear, even inferentially.

2. While the parties argue the question as to whether plaintiff was an invitee, in which event she would be owed the duty of ordinary care in keeping the premises safe (*Code* § 105-401), or whether she was a social guest, in which event she would be owed a lesser degree of care (*Laurens v. Rush,* 116 Ga. App. 65 (156 SE2d 482); *Patterson v. Thomas,* 118 Ga. App. 326 (163 SE2d 331)), the evidence clearly shows an absence of negligence on the part of either defendant, even assuming, but not deciding, that plaintiff was an invitee.

"A landowner is not the insurer of an invitee's safety." *Watson v. C.& S. Bank,* 103 Ga. App. 535, 536 (120 SE2d 62). Before a

---

[1]There is a presumption of agency of the wife "in all purchases of necessaries suitable to her condition and habits of life, made for the use of herself and the family." *Code* §§ 53-508, 53-510.

recovery is authorized for the plaintiff in an action against a homeowner for injuries suffered by the plaintiff while in the home it must be shown that the conditions allegedly causing the injuries were less safe than those provided by ordinarily prudent homeowners for their invitees. *Brand v. Pope,* 103 Ga. App. 489, 491 (119 SE2d 723). Accord: *Taff v. Harris,* 118 Ga. App. 611 (164 SE2d 881); *Pettit v. Stiles Hotel Co.,* 97 Ga. App. 137 (102 SE2d 693). And, if the object over which the plaintiff falls is not hidden, camouflaged, defective, or intrinsically un-safe, and is conspicuous, obvious, and apparent so that an ordi-narily prudent landowner would not reasonably anticipate danger from its existence or location to a person in the exercise of ordinary care for his own safety, there is no liability on the part of the landowner or occupier. See, e.g., *Lane Drug Stores v. Story,* 72 Ga. App. 886 (35 SE2d 472) (stool in aisle of defend-ant's store); *DeLay v. Rich's, Inc.,* 86 Ga. App. 30 (70 SE2d 546) (footstool in aisle of defendant's shoe department); *Tinley v. F. W. Woolworth Co.,* 70 Ga. App. 390 (28 SE2d 322) (scales in aisle of defendant's store); *National Bellas-Hess Co. v. Patrick,* 49 Ga. App. 280 (175 SE 255) (planks in aisle of defendant's store); *McMullan v. Kroger Co.,* 84 Ga. App. 195 (65 SE2d 420) (concrete bar in defendant's parking lot); *Moore v. Kroger Co.,* 87 Ga. App. 581 (74 SE2d 481) (push-cart in aisle of grocery store); *Rich's, Inc. v. South,* 91 Ga. App. 487 (85 SE2d 774) (boards in aisle of defendant's store). In *Tinley v. F. W. Wool-worth Co.,* 70 Ga. App. 390, 393, supra, where plaintiff tripped over some scales in the aisle of defendant's store, we held: "It should be borne in mind that the merchant, the occupier of the building, is not an insurer. As has been said in one case, 'What the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the store safe as a good business man is in such matters accustomed to use.' *McCrory Stores Corporation v. Ahern,* 65 Ga. App. 334, 340 (15 SE2d 797). The degree of diligence required here 'is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances.' *Code* § 105-201. The question here is, could the mischief have reasonably been foreseen? The rule must be applied with reference to the

situation of the property and its arrangement for the conduct of the business. A merchant must have a place to locate his goods, counters, and appliances with which to conduct his business, and when such appliances are not placed so as to threaten danger to those visiting the store, and are in full sight, and within the observation of everyone, the merchant is not liable for accidents which result from carelessness and inattention to the surroundings. We do not think that the allegations of the petition show that the defendant neglected any duty it owed to the plaintiff. The plaintiff was not exposed to any unreasonable and concealed danger. There was nothing in the manner in which the scales were placed and kept in the aisle from which such a result could be reasonably anticipated. . . There was nothing unusual in the placing of such a set of scales of the size and dimensions in question in the aisle of the defendant's store, to be used in connection with the defendant's business. Such a practice is in common use for stores of the same kind as the defendant's, as well as for various other kinds of stores. The scales were obvious to everyone using the aisle. The plaintiff had no right to complain of the absence of accommodation of an unusual kind."

In the instant case it does not appear that there was any defect in the premises, or any defect in the footstool itself. It cannot be considered negligent to move a footstool about in the living area of a home, which is the gist of plaintiff's complaint. Footstools used in connection with chairs are common in nearly every home, and it is common knowledge that articles of furniture such as chairs and footstools do not occupy a fixed status in the room. It is the very nature of a footstool *not* to occupy a fixed position. The footstool in question was large, conspicuous, and apparent, and under the circumstances of this case there is nothing to suggest that the daughter could or should reasonably have foreseen that injury would result from having the footstool in the living room or from calling to plaintiff about the bread crumbs. *Misenhamer v. Pharr,* 99 Ga. App. 163 (2) (107 SE2d 875); *Daneker v. Megrue,* 114 Ga. App. 312 (151 SE2d 157); *Palmer v. Stevens,* 115 Ga. App. 398 (19) (154 SE2d 803). These conditions are not less safe than those gener-

ally prevailing in other homes, and to impose liability here would make the defendants insurers. While plaintiff claims that her attention was distracted by Mary's calling to her, her attention was directed to the very direction in which she was walking, and she was not relieved of the duty of avoiding a large, familiar, and conspicuous object in her path. *Blakely v. Johnson,* 220 Ga. 572 (140 SE2d 857); *Barber v. East & West R. Co.,* 111 Ga. 838 (36 SE 50). It is generally incumbent upon one to use his eyesight for the discovering of any obstruction that may have been placed in the way. *Holliday v. Mayor &c. of Athens,* 10 Ga. App. 709, 713 (74 SE 67). And see *Day v. Trion Co.,* 56 Ga. App. 1 (192 SE 88).

"The [footstool] was not a slight or inconspicuous one, as in the cases of *McCrory Stores Corp. v. Ahern,* 65 Ga. App. 334 (15 SE2d 797); *Lane Drug Stores v. Brooks,* 70 Ga. App. 878 (29 SE2d 716); *Robertson v. Liggett Drug Co., Inc.,* 81 Ga. App. 850 (60 SE2d 268); *Wynne v. Southern Bell Tel. Co.,* 159 Ga. 623 (126 SE 388); [or in *Chotas v. J. P. Allen Co.,* 113 Ga. App. 731 (149 SE2d 527)] . . . Whether [it] was dangerous depends largely on whether [it] was such as would not necessarily be seen by the plaintiff in the exercise of ordinary care. [It] was on the surface, not hidden, and could easily have been seen by the plaintiff had [she] been exercising ordinary care in observing where [she] was walking." *McMullan v. Kroger Co.,* 84 Ga. App. 195, 198, supra. And see *Crown Cotton Mills v. McNally,* 123 Ga. 35 (2, 3) (51 SE 13).

Thus, since the wife cannot be held, the husband could not, even if there were an agency relationship.

3. The cases of *Martin v. Henson,* 95 Ga. App. 715 (99 SE2d 251); *Campbell v. Eubanks,* 107 Ga. App. 527 (130 SE2d 832); *Shepherd v. Whigham,* 111 Ga. App. 274 (141 SE2d 583), and *Mulligan v. Blackwood,* 115 Ga. App. 618 (155 SE2d 680) do not require a different result. Each of them is distinguishable on its facts.

*Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*
ARGUED JUNE 2, 1970—DECIDED JULY 15, 1970—
REHEARING DENIED JULY 30, 1970—

L. B. Kent, Louis H. Mitchell, for appellant.

Swift, Pease, Davidson & Chapman, Max R. McGlamry, for appellees.